1  Benjamin E. Hall   #219924
   **DOWLING, AARON & KEELER, INC.**
2  8080 North Palm Avenue, Third Floor
   P.O. Box 28902
3  Fresno, California 93729-8902
   Tel: (559) 432-4500 / Fax: (559) 432-4590
4  bhall@daklaw.com

5  Attorneys for Plaintiff, VISION TECHNOLOGY
   DESIGN & MANUFACTURING, INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11

12 | VISION TECHNOLOGY DESIGN & MANUFACTURING, INC., a California corporation, | Case No.
13 | | **COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**
14 | Plaintiff, |
15 | vs. | **JURY TRIAL DEMANDED**
16 | GENERAL WIRE SPRING COMPANY, a Pennsylvania corporation, |
17 | |
18 | Defendant. |

19

20        Plaintiff, VISION TECHNOLOGY DESIGN & MANUFACTURING, INC.
21 ("Vision Tech"), for its Complaint against GENERAL WIRE SPRING COMPANY ("General
22 Wire"), alleges:

23                              **JURISDICTION**

24        1.    Jurisdiction is proper in this court based on diversity of citizenship under
25 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000, exclusive of interest and
26 costs.

27                          **PRELIMINARY STATEMENT**

28        2.    This is a complaint for (a) damages arising out of General Wire's breaches

---

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

of its obligations under a requirements contract; and (b) declaratory relief arising out of General Wire's demand that Vision Tech cease and desist from manufacturing and promoting its sewer line camera products.

## VENUE

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to the instant claims occurred in this district, including without limitation that the business relationship between the parties was negotiated and entered into in this district; General Wire's orders for goods were sent to and received in this district; the goods were manufactured by Vision Tech in this district; Vision Tech received in this district a cease and desist letter from General Wire; and Vision Tech adopted and commenced use in this district of the trade dress that is the subject of General Wire's cease and desist letter.

## GENERAL ALLEGATIONS

4.  Plaintiff, Vision Tech, is a California corporation with its principal place of business in Turlock, California.

5.  Vision Tech is informed and believes and thereon alleges that defendant, General Wire, is a Pennsylvania corporation with its principal place of business in McKees Rocks, Pennsylvania.

6.  Since 1999, Vision Tech has been in the business of manufacturing sewer line cameras, sewer line leak detectors, and other similar products. Prior to 2002, Vision Tech sold its products to distributors and to ultimate consumers.

7.  General Wire is a distributor and seller of sewer line maintenance and inspection products, including sewer line cleaners, cameras and leak detectors. General Wire sells its products to individuals and businesses in the plumbing industry.

8.  In 2002, Vision Tech and General Wire entered into a business relationship wherein General Wire agreed that it would exclusively purchase from Vision Tech all of General Wire's requirements for certain sewer line inspection and maintenance products. That business relationship continued until mid-2006.

9.  Before General Wire began to use Vision Tech as its exclusive

manufacturer, General Wire used another manufacturer. When General Wire chose to use Vision Tech as its manufacturer, General Wire requested that Vision Tech change the appearance of Vision Tech's pre-existing products to mimic the appearance of General Wire's products. General Wire asserted that the purpose for this request was to facilitate the transition between the prior manufacturer and Vision Tech and to ensure that repair parts would be compatible. Vision Tech incurred various costs to accommodate General Wire's needs, including without limitation hiring professionals to redesign its products, create molds and drawings of General Wire's housings, and other actions, all in order to manufacture products to match General Wire's exclusive needs.

10. In connection with their business relationship, General Wire loaned Vision Tech approximately $400,000. That loan was secured by a chattel mortgage on Vision Tech's inventory, and was repaid in full in August 2006.

11. In or about September 2002, General Wire began ordering products from Vision Tech. The course of dealing between the parties was that General Wire would issue written purchase orders to Vision Tech approximately six (6) months in advance of General Wire's requested ship date for those products. The parties also agreed upon prices for these products in advance, which prices changed from time to time by mutual agreement.

12. General Wire also regularly provided Vision Tech with sales projections for the three (3) to six (6) months that followed, so that Vision Tech could order and have on hand sufficient quantities of component parts for the manufacture of General Wire's products. Vision Tech did in fact pre-order these components from its vendors pursuant to General Wire's sales projections. Most of the components had to be specially manufactured by Vision Tech's vendors, because they contained General Wire's logo, product name, specific product color scheme, and other General Wire-specific features.

13. Vision Tech and General Wire also agreed that Vision Tech would give volume discounts for certain products if, in a particular twelve-month period, General Wire ordered at or above a minimum number of those certain products. Not all products had volume discounts, and no discount applied to any product where General Wire's monthly purchases for

that product did not meet or exceed the minimum monthly amount.

14. Beginning in September 2005, General Wire sent sales projections and purchase orders to Vision Tech for delivery of products during the months of November 2005 through August 2006. After receiving these sales projections and purchase orders, Vision Tech ordered sufficient parts from its vendors to manufacture General Wire's products, and where a purchase order was issued, began manufacturing products per General Wire's purchase orders.

15. However, beginning in May 2006, General Wire stopped making payments to Vision Tech on products that it had ordered, including in some cases products that Vision Tech had already manufactured and shipped to General Wire.

16. Also commencing in May 2006, General Wire told Vision Tech not to ship any more products, despite the fact that Vision Tech had manufactured such products pursuant to General Wire's purchase orders.

17. At the time General Wire ceased making payments and accepting shipments, General Wire knew that Vision Tech had ordered components from its vendors according to General Wire's sales projections. In some cases, Vision Tech was able to cancel its orders for these components. In other cases, however, Vision Tech was unable to cancel orders from its vendors. Where Vision Tech was able to cancel its component orders from its vendors, Vision Tech incurred cancellation fees. Where Vision Tech was unable to cancel its component orders, Vision Tech was forced to purchase hundreds of thousands of dollars worth of components, many of which were specially manufactured with General Wire's name, the name of General Wire's products, and/or other General Wire-specific characteristics.

18. General Wire's failure and refusal to pay for products Vision Tech had manufactured, and General Wire's unwillingness to make further manufacturing orders based on General Wire's prior sales projections, was the proximate cause of severe financial damages to Vision Tech.

19. Following the termination of the exclusive supplier relationship between Vision Tech and General Wire, Vision Tech designed and created new products for sale under its own name, including its Intruder and Intruder Elite (formerly ProCam) video inspection units.

Vision Tech began to market those products to the public in or around February 2007.

20. By letter dated March 2, 2007, General Wire, through its attorney, demanded that Vision Tech "cease and desist from . . . designing, manufacturing and promoting" its Intruder and Intruder Elite products. A true and correct copy of General Wire's cease and desist letter is attached to this Complaint as Exhibit A.

21. In its demand letter, General Wire asserts: "As a result of both the similarities with products and components of General Wire and the attendant confusion in the marketplace created by Vision Tech's promotional efforts, we have discovered the following: (1) Vision's ProCam closely resembles General Wire's Gen-Eye Junior; (2) Vision's ProCam includes, as component parts, two custom springs that were specially designed and manufactured by General Wire for use in a General Wire product and for which Vision never received licensing from General Wire or in any way paid for the use of the same; (3) Vision's ProCam includes a custom General Wire-developed instruction label on the inside cover of command module cover door; (4) the drum, with the exception of a slight color modification and name change, is identical to the drum used in General Wire's Gen-Eye Junior; (5) Vision is using a command module that was developed in accordance with custom specifications generated by General Wire following significant time involvement and investment in the development, trouble shooting, and direction of the product by General Wire."

22. General Wire further contends in its cease and desist letter that Vision Tech "is violating state and federal law, including, but not limited to, federal copyright law."

23. The allegations contained in General Wire's cease and desist letter are false. Vision Tech and its agents designed the custom springs, instruction label and command module. General Wire has no proprietary rights in Vision Tech's Intruder or Intruder Elite products or any of their component parts.

24. There is no likelihood of confusion between Vision Tech's products and General Wire's products.

25. No actionable infringement or dilution claim arises from Vision Tech's promotion and sale of its Intruder and Intruder Elite products.

26. No unfair competition claim arises from Vision Tech's promotion and sale of its Intruder and Intruder Elite products.

## FIRST CAUSE OF ACTION

### Breach of Contract - Exclusive Requirements Contract

27. Vision Tech incorporates each and every allegation contained in Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

28. Vision Tech and General Wire entered into an exclusive requirements contract, which contract was partially written, partially oral and partially implied in fact. Pursuant to that contract, General Wire agreed to order and purchase its requirements of all sewer line maintenance and inspection products exclusively from Vision Tech, and Vision Tech agreed to exclusively manufacture such products for General Wire. Pursuant to this contract, General Wire ordered products from Vision Tech generally using individual purchase orders.

29. To enable Vision Tech to manufacture and ship products to meet General Wire's requirements, General Wire usually provided Vision Tech with its sales projections at least three (3) months in advance of any purchase orders. Vision Tech would then order from its vendors the components necessary to be able to manufacture sufficient General Wire products to meet those projections. This special manufacture took time, and could not wait to be done until Vision Tech received an actual purchase order from General Wire. Vision Tech is informed and believes and thereon alleges that General Wire knew that it was necessary for Vision Tech to order components for General Wire's products from its vendors in advance of Vision Tech's receipt of General Wire's purchase orders.

30. Pursuant to the requirements contract, between March and August 2006 General Wire issued purchase orders to Vision Tech for sewer line maintenance and inspection products. General Wire also provided Vision Tech with sales projections for those months, and Vision Tech ordered from its vendors sufficient quantities of components to be able to manufacture General Wire's products pursuant to those projections.

31. Vision Tech performed its obligations under its requirements contract with General Wire. It ordered components from its vendors pursuant to General Wire's sales

1  projections, commenced and completed manufacture of General Wire products pursuant to
2  General Wire purchase orders, and shipped products to General Wire pursuant to General
3  Wire's purchase orders.

4      32.    General Wire breached its requirements contract with Vision Tech by
5  failing to pay for the products it had ordered from Vision Tech and ceasing to order products
6  from Vision Tech, knowing that Vision Tech had already ordered the component parts and that
7  General Wire was Vision Tech's only customer.

8      33.    General Wire had reason to know that as a result of its conduct, Vision
9  Tech would suffer consequential damages including lost profits on the sale of the goods.

10      34.    As a proximate result of General Wire's breach of, and failure to perform
11  under, the requirements contract, Vision Tech has suffered damages in an amount to be proven at
12  trial but including the principal balance of $588,951.78 for products manufactured, shipped and
13  invoiced to General Wire; interest on open invoices at the contract rate of 1.5 percent per month
14  from the due date of each invoice; hundreds of thousands of dollars for the cost of non-reusable
15  component parts purchased by Vision Tech; and lost profits.

16  WHEREFORE, Vision Tech prays for judgment against defendant General Wire
17  as hereinafter set forth.

## SECOND CAUSE OF ACTION

### Breach of Contract - Purchase Orders

20      35.    Vision Tech incorporates each and every allegation contained in
21  Paragraphs 1 through 34 of this Complaint as though fully set forth herein.

22      36.    From March through August 2006, General Wire and Vision Tech entered
23  into express contracts under which General Wire agreed to buy from Vision Tech, and Vision
24  Tech agreed to manufacture and sell to General Wire, certain sewer line maintenance and
25  inspection products. These contracts were memorialized in writing by, among other documents,
26  purchase orders that set forth the description and quantity of products General Wire desired and
27  an agreed price list.

28      37.    Vision Tech fully performed its obligations under these contracts.

Dowling, Aaron & Keeler INCORPORATED
8080 N. Palm Avenue
Third Floor
Fresno, California 93711

38. General Wire has breached its contracts with Vision Tech by refusing to pay for the products it ordered from Vision Tech pursuant to those contracts.

39. As a proximate result of General Wire's breach of, and failure to perform under, the above contracts, Vision Tech has suffered damages in an amount not less than $588,951.78 plus interest accruing at the rate of 1.5 percent per month from the due date of each invoice.

40. Vision Tech has also suffered consequential damages due to having ordered parts costing hundreds of thousands of dollars from its vendors based on General Wire's sales projections and anticipated purchase orders. Vision Tech is informed and believes and thereon alleges that General Wire knew Vision Tech would incur these costs in order to fulfill General Wire's orders and that General Wire reasonably anticipated Vision Tech would suffer these damages as a result of General Wire's breach.

WHEREFORE, Vision Tech prays for judgment against defendant General Wire as hereinafter set forth.

### THIRD CAUSE OF ACTION

**Promissory Estoppel**

41. Vision Tech incorporates each and every allegation contained in Paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. General Wire promised Vision Tech that it would use Vision Tech as its exclusive manufacturer of all sewer line maintenance and inspection products, and that it would in good faith and on a regular basis inform Vision Tech of its future product needs.

43. General Wire made these promises reasonably expecting that they would induce Vision Tech to act in accordance with them by performing such manufacturing tasks, altering its products to meet the needs of General Wire, and reorganizing its business to be an exclusive manufacturer of General Wire's products.

44. Vision Tech reasonably relied upon General Wire's promises. It changed its product design to suit General Wire's needs; it ordered components, some of which were specially manufactured, from its vendors to manufacture General Wire's products; and it

manufactured and shipped specially manufactured products to General Wire.

45. Beginning in May 2006, General Wire failed and refused to pay Vision Tech for the products General Wire ordered. General Wire also failed to place further orders at or near the level suggested by its sales projections. Vision Tech is informed and believes and thereon alleges that General Wire's failure to order or purchase products from Vision Tech did not result from external forces beyond General Wire's control.

46. As a proximate result of General Wire's actions, Vision Tech has incurred damages in an amount to be proven at trial for products Vision Tech manufactured but for which General Wire has not paid Vision Tech; in purchasing components from vendors for orders that General Wire promised it would make but never did; and in cancellation costs in attempting to cancel prior orders to Vision Tech's vendors for components for General Wire's products.

47. It would be unjust not to enforce General Wire's promises to Vision Tech. Vision Tech agreed to become General Wire's exclusive manufacturer. Vision Tech incurred costs in changing its products to suit General Wire's product needs. Vision Tech cannot mitigate its damages because many of the components it purchased are specially manufactured and bear General Wire's product color, logos, and other General Wire-specific features.

WHEREFORE, Vision Tech prays for judgment against defendant General Wire as hereinafter set forth.

### FOURTH CAUSE OF ACTION

#### Unjust Enrichment

48. Vision Tech incorporates each and every allegation contained in Paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49. Vision Tech conferred a benefit on General Wire in that it manufactured sewer line maintenance and inspection products for General Wire pursuant to its orders for such products, all at Vision Tech's expense.

50. General Wire has retained the products Vision Tech has shipped to it, and has failed to pay Vision Tech for the products it ordered from Vision Tech, despite Vision Tech's repeated requests that General Wire do so.

51. As a proximate result of General Wire's actions, Vision Tech has been damaged in an amount to be proven at trial.

WHEREFORE, Vision Tech prays for judgment against defendant General Wire as hereinafter set forth.

### FIFTH CAUSE OF ACTION

**Common Count - Goods Sold and Delivered**

52. Vision Tech incorporates each and every allegation contained in Paragraphs 1 through 51 of this Complaint as though fully set forth herein.

53. Within the past four years, Vision Tech sold and delivered to General Wire certain sewer line products at the special request of General Wire, and General Wire became indebted to Vision Tech in the principal sum of $588,951.78 for goods sold and delivered.

54. Although repeatedly requested to do so, General Wire has neglected, failed, and refused to pay Vision Tech for the goods.

55. There is now owing to Vision Tech the principal sum of $588,951.78 plus interest accruing at the rate of 1.5 percent per month from the due date of each invoice. As of the date of this filing, accrued interest under Vision Tech's open invoices to General Wire totaled not less than $79,211.42.

WHEREFORE, Vision Tech prays for judgment against defendant General Wire as hereinafter set forth.

### SIXTH CAUSE OF ACTION

**Declaratory Judgment**

56. Vision Tech incorporates each and every allegation contained in Paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57. As a result of General Wire's cease and desist letter, an actual case or controversy exists between General Wire and Vision Tech relating to Vision Tech's promotion and sale of its Intruder and Intruder Elite products.

58. As Vision Tech is being threatened with an action for damages and other

relief, Vision Tech is in need of, and entitled to, a judicial declaration of each party's respective rights and liabilities as they pertain to Vision Tech's continued promotion and sale of its Intruder and Intruder Elite products, pursuant to 28 U.S.C. § 2201.

WHEREFORE, Vision Tech prays for judgment against defendant General Wire as hereinafter set forth.

## PRAYER

WHEREFORE, plaintiff, Vision Tech, prays for judgment against defendant, General Wire, as follows:

AS TO THE FIRST AND SECOND CAUSES OF ACTION:

1. For compensatory damages according to proof;
2. For incidental and consequential damages, including lost profits, according to proof;
3. For prejudgment interest including interest on unpaid invoices at the contract rate of 1.5 percent per month from the due date of each invoice;

AS TO THE THIRD CAUSE OF ACTION:

4. For damages according to proof;
5. For prejudgment interest including interest on unpaid invoices at the contract rate of 1.5 percent per month from the due date of each invoice;

AS TO THE FOURTH CAUSE OF ACTION:

6. For damages according to proof;
7. For prejudgment interest including interest on unpaid invoices at the contract rate of 1.5 percent per month from the due date of each invoice;

AS TO THE FIFTH CAUSE OF ACTION:

8. For the principal sum of $588,951.78;
9. For prejudgment interest at the contract rate of 1.5 percent per month from the due date of each invoice;

AS TO THE SIXTH CAUSE OF ACTION:

10. For a declaratory judgment in favor of Vision Tech and against General


Dowling, Aaron & Keeler INCORPORATED
8080 N. Palm Avenue
Third Floor
Fresno, California 93711

Wire declaring that (a) Vision Tech's Intruder and Intruder Elite products do not infringe upon any protectable trademark or trade dress of General Wire; (b) no claim for unfair competition arises from Vision Tech's promotion and sale of its Intruder and Intruder Elite products; (c) no claim for copyright infringement arises from Vision Tech's promotion and sale of its Intruder and Intruder Elite products and (d) Vision Tech is otherwise without liability to General Wire, or any of its licensees or assigns, stemming from Vision Tech's promotion and sale of its Intruder and Intruder Elite products;

TO ALL CAUSES OF ACTION:

11. For costs of suit incurred herein;

12. For any further relief as the court may deem proper.

Dated: March 13, 2007.

DOWLING, AARON & KEELER INC.

By: _____
Benjamin E. Hall
Attorneys for VISION TECHNOLOGY
DESIGN & MANUFACTURING, INC.

### JURY TRIAL DEMANDED

Trial by jury is hereby demanded as to any and all causes of action that may be tried by a jury.

Dated: March 13, 2007.

DOWLING, AARON & KEELER INC.

By: _____
Benjamin E. Hall
Attorneys for VISION TECHNOLOGY
DESIGN & MANUFACTURING, INC.

F:\WPD\120\12554\001\1692b1915.beh.doc

EXHIBIT A

TO

VISION TECHNOLOGY DESIGN & MANUFACTURING, INC.'S

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF



Steven W. Zoffer
Attorney-at-Law
Admitted in PA, DC

Direct Dial: 412-392-5492
Direct Fax: 412-392-5367
szoffer@dmclaw.com

March 2, 2007

Michael Ijams, Esquire
Curtis & Arata, P.C.
1300 K. Street
Post Office Box 3030
Modesto, CA 95354

RE:   General Wire Spring Co. --In Re: Vision Technology Design
      & Manufacturing, Inc.
      Our File No.: 7306.295592

Dear Mr. Ijams:

On behalf of General Wire Spring Company ("General Wire"), we are writing to place you on notice of General Wire's intention to enforce their contractual and intellectual property rights. As you know, General Wire is a supplier of products designed and manufactured for the pipe cleaning industry. In this regard, General Wire has invested, as the Settlement Agreement executed on behalf of our respective clients in October, 2006, acknowledges, a great deal of time and money into the development of its products. As a result, it is recognized in the marketplace that General Wire's products include, but are not limited to, certain identifiable pipe inspection video equipment (*e.g.*, the Gen-Eye Pipe Inspection/Location System).

We recently became aware that your client, Vision Technology Design & Manufacturing, Inc. ("Vision"), has been promoting, among other products, units that they call the ProCam Mini and Micro System and an "Intruder" Video Inspection System in the marketplace, including at a recent Cole Publishing-sponsored trade show in Nashville, Tennessee in early February, 2007. Further, we have learned that Vision has entered into an arrangement with Rycom Instruments, Inc. ("Rycom") to sell the ProCam either under the name "ProCam" or some other name (*e.g.*, Pipe-Sight). As a result of both the similarities with products and components of General Wire and the attendant confusion in the marketplace created by Vision Tech's promotional efforts, we have discovered the following: (1) Vision's ProCam closely resembles General Wire's Gen-Eye Junior; (2) Vision's ProCam includes, as component parts, two custom springs that were specially designed and manufactured by General Wire for use in a General Wire product and for which Vision never received licensing from General Wire or in any way paid for the use of the same; (3) Vision's ProCam includes a custom General Wire-developed instruction label on the inside cover of command module cover door; (4) the drum, with the exception of a slight color modification and name change, is identical to the drum used in General Wire's Gen-Eye Junior;

DICKIE, McCAMEY & CHILCOTE, P.C. | ATTORNEYS AT LAW
MAIN: 412-281-7272 FAX: 412-392-5367
TWO PPG PLACE, SUITE 400 | PITTSBURGH, PA 15222-5402 | WWW.DMCLAW.COM

Pittsburgh | Harrisburg | Philadelphia | Washington, D.C.
New Jersey | North Carolina | Ohio | West Virginia

EXHIBIT A

Michael Ijams, Esquire
March 2, 2007
Page 2

(5) Vision is using a command module that was developed in accordance with custom specifications generated by General Wire following significant time involvement and investment in the development, trouble shooting, and direction of the product by General Wire We can only speculate as to what additional and similar unlawful practices Vision may be engaged in.

In as much as Vision's current promotional efforts are creating confusion in the marketplace, Vision is violating state and federal law, including, but not limited to, federal copyright law. Further, in as much as Vision's current promotional efforts are "supplying, or attempting to supply, products attributable to and/or identifiable with General Wire," Vision is violating the aforementioned Settlement Agreement. That agreement, in pertinent part, provides:

> It is expressly understood and agreed that Vision recognizes and represents that General Wire Spring Company has devoted substantial time, effort, and monetary resources to securing its products, including, but not limited to, its Gen-Eye products a competitive and advantageous position in the marketplace. Vision recognizes and represents that it will refrain from supplying, or attempting to supply, products attributable to and/or identifiable with General Wire Spring Company, including, but not limited to, General Wire Spring Company's Gen-Eye products. Vision recognizes and represents that General Wire Spring Company has contributed significant monies toward the development of the Gen-Eye product line, including having paid for a large portion of the molds for General Wire Spring Company's Gen-Eye products.

Given the seriousness of this matter, we demand that Vision cease and desist from engaging in any further misleading and illegal practices of designing, manufacturing, and promoting products that, although marketed by Vision under a new name (e.g., ProCam), were originally developed for General Wire (e.g., Gen-Eye Junior). Vision must refrain from infringing upon General Wire's intellectual property rights. Please confirm, in writing, Vision's intention to comply with this demand no later than ten business days from the date of this correspondence. Please be advised that if Vision does not immediately cease and desist from their unlawful practices, we will seek all appropriate legal remedies, without prior notification. Additionally, General Wire will treat Visions failure to cease and desist, as requested, as a further breach of the aforementioned Settlement Agreement, thereby solidifying General Wire's ability to send correspondence, similar to this one, to entities such as Rycom without violating the confidentiality provision contained therein.

Michael Ijams, Esquire
March 2, 2007
Page 3

We thank you and look forward to your prompt response and cooperation.

Very truly yours,

Steven W. Zoffer
Counsel for General Wire Spring Company

SWZ/kam