IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISION TECHNOLOGY DESIGN & MANUFACTURING, INC., ) ) ) | No. CV-F-07-412 OWW/GSA |
| ) ) ) | MEMORANDUM DECISION AND ORDER DENYING  DEFENDANT'S SECOND MOTION TO DISMISS OR |
| Plaintiff, ) ) | TRANSFER (Doc. 30) AND GRANTING PLAINTIFF'S |
| vs. ) ) | COUNTERMOTION TO FILE SECOND AMENDED COMPLAINT (Doc. 33) |
| ) GENERAL WIRE SPRING COMPANY, ) ) | |
| ) Defendant. ) ) | |
| _____) | |

        By Memorandum Decision filed on July 17, 2007, Defendant

General Wire Spring Company's (General Wire) motion for dismissal

or transfer for improper venue pursuant to Rule 12(b)(3), Federal

Rules of Civil Procedure, was denied.  General Wire's  motion to

dismiss for failure to state a claim pursuant to Rule 12(b)(6)

was denied in part and granted in part with leave to amend.

(Doc. 13).  Thereafter, Plaintiff Vision Technology Design &

Manufacturing, Inc. (Vision Tech) filed a First Amended Complaint

(FAC).

1

1    The FAC alleges that Vision Tech, a California corporation,

2 has been in the business of manufacturing sewer line cameras,

3 sewer line leak detectors and other similar products; that, prior

4 to 2002, Vision Tech sold its products to distributors and to

5 ultimate consumers; and that General Wire, a Pennsylvania

6 corporation, is a distributor and seller of sewer line

7 maintenance and inspection products, including sewer line

8 cleaners, cameras and leak detectors, which it sells to

9 individuals and businesses in the plumbing industry.  The FAC

10 alleges:

11          8.  In 2002, Vision Tech and General Wire
             entered into a business relationship wherein
12           General Wire agreed that it would exclusively
             purchase from Vision Tech all of General
13           Wire's requirements for certain sewer line
             inspection and maintenance products.  That
14           business relationship continued until mid-
             2006.
15
             9.  Before General Wire began to use Vision
16           Tech as its exclusive manufacturer, General
             Wire used another manufacturer.  When General
17           Wire chose to use Vision Tech as its
             manufacturer, General Wire requested that
18           Vision Tech change the appearance of Vision
             Tech's pre-existing products to mimic the
19           appearance of General Wire's products.
             General Wire asserted that the purpose for
20           this request was to facilitate the transition
             between the prior manufacturer and Vision
21           Tech and to ensure that repair parts would be
             compatible.  Vision Tech incurred various
22           costs to accommodate General Wire's needs,
             including without limitation hiring
23           professionals to redesign its products,
             create molds and drawings of General Wire's
24           housings, and other actions, all in order to
             manufacture products to match General Wire's
25           exclusive needs.

26           10.  In connection with their business

                                2

relationship, General Wire loaned Vision Tech approximately $400,000.  That loan was secured by a chattel mortgage on Vision Tech's inventory, and was repaid in full in August 2006.

11.  In or about September 2002, General Wire began ordering products from Vision Tech. The course of dealing between the parties was that General Wire would issue written purchase orders to Vision Tech approximately six (6) months in advance of General Wire's requested ship date for those products.  The parties also agreed upon prices for these products in advance, which prices changed from time to time by mutual agreement.

12.  General Wire also regularly provided Vision Tech with sales projections for the three (3) to six (6) months that followed, so that Vision Tech could order and have on hand sufficient quantities of component parts for the manufacture of General Wire's products. Vision Tech did in fact pre-order these components from its vendors pursuant to General Wire's sales projections.  Most of the components had to be specially manufactured by Vision Tech's vendors, because they contained General Wire's logo, product name, specific product color scheme, and other General Wire-specific features.

13.  Vision Tech and General Wire also agreed that Vision Tech would give volume discounts for certain products if, in a particular twelve-month period, General Wire ordered at or above a minimum number of those certain products.  Not all products had volume discounts, and no discount applied to any product where General Wire's monthly purchases for that product did not meet or exceed the minimum monthly amount.

14.  Beginning in September 2005, General Wire sent sales projections and purchase orders to Vision Tech for delivery of products during the months of November 2005 through August 2006.  After receiving those sales projections and purchase orders, Vision Tech ordered sufficient parts from its vendors to manufacture General Wire's

3

products, and where a purchase order was issued, began manufacturing products per General Wire's purchase orders.

15.  However, beginning in May 2006, General Wire stopped making payments to Vision Tech on products that it had ordered, including in some cases products that Vision Tech had already manufactured and shipped to General Wire.

16.  Also commencing in May 2006, General Wire told Vision Tech not to ship any more products, despite the fact that Vision Tech had manufactured such products pursuant to General Wire's purchase orders.

17.  At the time General Wire ceased making payments and accepting shipments, General Wire knew that Vision Tech had ordered components from its vendors according to General Wire's sales projections.  In some cases, Vision Tech was able to cancel its orders for these components.  In other cases, however, Vision Tech was unable to cancel orders from its vendors.  Where Vision Tech was able to cancel its component orders from its vendors, Vision Tech incurred cancellation fees.  Where Vision Tech was unable to cancel its component orders, Vision Tech was forced to purchase hundreds of thousands of dollars worth of components, many of which were specifically manufactured with General Wire's name, the name of General Wire's products, and/or other General Wire-specific characteristics.

18.  General Wire's failure and refusal to pay for products Vision Tech had manufactured and General Wire's unwillingness to make further manufacturing orders based on General Wire's prior sales projections, was the proximate cause of severe financial damages to Vision Tech.

19.  Following the termination of the exclusive supplier relationship between Vision Tech and General Wire, Vision Tech designed and created new products for sale under its own name, including its Intruder and Intruder Elite (formerly ProCam) video

4

inspection units.   Vision Tech began to
market these products to the public in or
around February 2007.

20.  By letter dated March 2, 2007, General
Wire, through its attorney, demanded that
Vision Tech 'cease and desist from ...
designing, manufacturing and promoting' its
Intruder and Intruder Elite products ....

21.  In its demand letter, General Wire
asserts: 'As a result of both the
similarities and components of General Wire
and the attendant confusion in the
marketplace created by Vision Tech's
promotional efforts, we have discovered the
following: (1) Vision's ProCam closely
resembles General Wire's Gen-Eye Junior; (2)
Vision's ProCam includes, as component parts,
two custom springs that were specially
designed and manufactured by General Wire for
use in a General Wire product and for which
Vision never received licensing from General
Wire or in any way paid for the use of the
same; (3) Vision's ProCam includes a custom
General Wire-developed instruction label on
the inside cover of command module cover
door; (4) the drum, with the exception of a
slight color modification and name change, is
identical to the drum used in General Wire's
Gen-Eye Junior; (5) Vision is using a command
module that was developed in accordance with
custom specifications generated by General
Wire following significant time involvement
and investment in the development, trouble
shooting, and direction of the product by
General Wire.'

22.  General Wire further contends in its
cease and desist letter that Vision Tech 'is
violating state and federal law, including,
but not limited to, federal copyright law.'

23.  The allegations contained in General
Wire's cease and desist letter are false.
Vision Tech and its agents designed the
custom springs, instruction label and command
module.  General Wire has no proprietary
rights in Vision Tech's Intruder or Intruder
Elite products or any of their component
parts.

5

24.  There is no likelihood of confusion between Vision Tech's products and General Wire's products.

25.  No actionable infringement or dilution claim arises from Vision Tech's promotion and sale of its Intruder and Intruder Elite products.

26.  No unfair competition claim arises from Vision Tech's promotion and sale of its Intruder and Intruder Elite products.

The FAC alleges the following causes of action:

1.  First Cause of Action for breach of contract - exclusive requirements contract;

2.  Second Cause of Action for breach of contract - purchase orders;

3.  Third Cause of Action for promissory estoppel;

4.  Fourth Cause of Action for unjust enrichment;

5.  Fifth Cause of Action for common count - goods sold and delivered;

6.  Sixth Cause of Action for declaratory judgment.

The Sixth Cause of Action alleges in pertinent part:

58.  As a result of General Wire's cease and desist letter, an actual case or controversy exists between General Wire and Vision Tech relating to Vision Tech's promotion and sale of its Intruder and Intruder Elite products.

59.  As Vision Tech is being threatened with an action for damages and other relief, Vision Tech is in need of, and entitled to, a judicial declaration of each party's respective rights and liabilities as they pertain to Vision Tech's continued promotion and sale of its Intruder and Intruder Elite products, pursuant to 28 U.S.C. § 2201.

A Scheduling Order was filed on August 21, 2007 (Doc. 23).

6

1    Also on August 21, 2007, General Wire filed its Answer,

2    Affirmative Defenses, and Counterclaim (Doc. 24).  The Twenty-

3    Second Affirmative Defense is captioned "Intellectual Property,

4    Including Trade Dress Claims."

5        Attached to General Wire's motion is a copy of a letter

6    dated August 21, 2007 from General Wire's attorney, Steven

7    Zoffer, to Benjamin Hall, then counsel for Vision Tech.  The

8    August 21, 2007 states:

9            By way of follow-up to our discussions at the
             time of our Rule 26(f) Conference and
10           Conference before Judge Wanger, General Wire
             would be agreeable to not assert its
11           intellectual property claims regarding the
             similarities between General Wire's Gen-Eye
12           products and Vision Tech's Intruder and
             Intruder Elite products, which it would
13           otherwise intend to include by way of
             counterclaim in this matter.  In exchange,
14           and with the understanding that the only
             basis for Vision Tech's declaratory judgment
15           action is the assertion of General Wire's
             intellectual property rights, we would
16           propose an agreement by which General Wire
             will forego its intellectual property claims
17           in exchange for a withdrawal of the
             Plaintiff's declaratory judgment claim, as
18           set forth in the Complaint [sic].  This
             proposal would have the effect of not only
19           narrowing the rather diverse disputes which
             currently exist between the parties in an
20           effort to move this matter toward resolution,
             but would also, we believe, significantly
21           conserve the parties' respective resources
             which would be needed for discovery and
22           pursuing these claims through litigation.

23           As you know, including from General Wire's
             March 2, 2007 correspondence, General Wire
24           takes the protection of its intellectual
             property very seriously.  Further, General
25           Wire strongly believes that Vision Tech's
             Intruder and Intruder Elite products, as they
26           exist in their current versions, infringe

                                7

upon General Wire's intellectual property
rights.  General Wire, however, also
understands that intellectual property
litigation is expensive and will entail
engineering experts, market confusion
experts, and surveys of the parties'
respective customers.  To the extent the
parties currently are able to resolve the
declaratory judgment/intellectual property
component of this litigation, General Wire
would agree not to advance its current trade
dress, trade secret, and unfair competition
counterclaims which are directed to the
Intruder and Intruder Elite products being
offered by Vision Tech.

In this way, General Wire would not object to
Vision Tech's continued promotion and sale of
its current Intruder and Intruder Elite
products.  In exchange, we would propose that
Vision Tech simply agree to the enclosed
Consent Motion, or, in the alternative, work
with General Wire to otherwise resolve the
declaratory judgment/intellectual property
component of this litigation at the current
time.  Notwithstanding this proposal, General
Wire reserves the right to amend its Answer,
New Matter, and Counterclaim to include its
trade dress, trade secret, unfair competition
claims, as well as any related intellectual
property claims, in the event that General
Wire and Vision Tech cannot currently resolve
this issue.

Attached to Mr. Zoffer's letter is a pleading captioned "Consent

Motion to Withdraw Plaintiff's Declaratory Judgment Claim", which

states in pertinent part:

8.  The parties have agreed to resolve [the
Sixth Cause of Action] ... and, accordingly,
request this Court enter the attached Order.

9.  Specifically, in exchange for General
Wire's agreement to forego its intellectual
property counterclaims regarding the
similarities which General Wire believes to
exist between General Wire's Gen-Eye products
and Vision Tech's Intruder and Intruder Elite
products, Vision Tech, in turn, agrees to

> withdraw its sixth cause of action requesting a declaratory judgment.
>
> 10.  General Wire specifically agrees not to object to Vision Tech's continued promotion and sale of the Intruder and Intruder Elite products, as those products currently exist.
>
> 11.  Vision Tech, therefore, no longer requires a declaration from this Court regarding its continued promotion and sale of its Intruder and Intruder Elite products.

Attached to the Consent Motion is the following Order granting the Consent Motion, withdrawing the Sixth Cause of Action, and striking Paragraphs 57-59 of the FAC and Paragraph 10 of the Prayer.

By letter dated September 13, 2007, Daniel Jamison, present counsel for Vision Tech, responded:

> Vision Tech[] ... will not enter into your proposed Consent Motion.  However, if General Wire ... willing to stipulate to judgment in Vision Tech's favor with respect to the trade dress issue, adequately protecting Vision Tech from any such future claims, we may be able to work out an arrangement along those lines, provided that General Wire also stipulate that the remaining disputes continue to be litigated in the Eastern District of California.  In the alternative, the entire lawsuit could be resolved immediately by (1) sufficient payment by General Wire to Vision Tech and (2) an agreement fully and finally resolving the trade dress claims, so that each party can proceed with its respective business without interference from the other party.

A.  <u>General Wire's Motion to Dismiss or Transfer</u>.

General Wire moves the Court "to enter the proposed Order of Court attached to General Wire's Motion, disposing of Vision Tech's claim for a declaratory judgment, entering a declaration

in favor of Vision Tech, and dismissing or transferring this matter to the United States District Court for the Western District of Pennsylvania on the basis of improper venue."   The proposed Order attached to General Wire's instant motion states in pertinent part:

> 1.   Plaintiff's sixth cause of action for a declaratory judgment is dismissed, and paragraphs 57, 58, and 59 of Plaintiff's Amended Complaint, was well as paragraph 10 of Plaintiff's Prayer following Plaintiff's Amended Complaint, are stricken.
>
> 2.   Plaintiff may continue to promote and sell its Intruder and Intruder Elite products, as those products currently exist and in their current versions, with the understanding that Plaintiff's products shall neither resemble the color or markings of Defendant's Gen-Eye products nor display Defendant's corporate or trade name.
>
> 3.   The remainder of this action is transferred to the United States District Court for the Western District of Pennsylvania.  Because Plaintiff's declaratory relief claim is moot and, therefore, no longer validly existing in the Eastern District of California, enforcement of the forum selection clause contained in the parties' purchase orders is reasonable.

As discussed in the July 17, 2007 Memorandum Decision, there is a forum selection clause in General Wire's purchase orders:

> 19.   LAW GOVERNING - Any contract resulting from acceptance of this offer shall be governed by the laws of the Commonwealth of Pennsylvania.  Venue for any suit by Seller shall be in and only in the Pennsylvania state court of proper jurisdiction in Allegheny County, Pennsylvania, or the United States District Court for the Western District of Pennsylvania.

The July 17, 2007 Memorandum Decision ruled in pertinent part:

10

General Wire argues that Vision Tech's reliance on these cases to defeat application of the purchase orders' forum selection clause is misplaced because five of the six causes of action advanced by Vision stem directly from the various purchase orders that defined the parties' relationship. General Wire further contends that the Sixth Cause of Action for declaratory relief stems indirectly from the purchase orders because, without the purchase orders, the parties would not have had a relationship.  General Wire argues that Vision Tech's case

> is not broader, in terms of the time period covered by the forum selection clause, the parties, or in any other way, than the applicable purchase orders.  All of Vision Tech's claims relate either directly or indirectly to the purchase orders.  Vision Tech has failed to, and cannot, demonstrate any unreasonableness of the agreed upon forum selection clause. Enforcement of the forum selection clause will neither deprive Vision Tech of its day in court nor contradict sound judicial policy. *Frigate Ltd.* ..., Enforcement will not subject claims to the forum selection clause which originated prior to the forum selection clause's effective date. *Pegasus Transp.*, 152 F.R.D. at 575. Enforcement also will not subject any individuals or entities to the forum selection clause which were not parties to he underlining [sic] purchase orders. *Farmland Indus., Inc.*, 806 F.2d at 852.

This analysis is misplaced.  Taking the Complaint's allegations as true, Vision Tech alleges that a broader contractual arrangement was formed, only a portion of which was represented by purchase orders. General Wire is alleged to have agreed to exclusively purchase from Vision Tech all General Wire's requirements for sewer line inspection and maintenance products.  An

11

additional contract, executed by part
performance that caused Vision Tech to
purchase large numbers of parts to its
economic detriment, is also alleged.

The motion to dismiss or transfer this action
based on the forum selection clause is
DENIED.  As Vision Tech argues, not all of
its claims are based on breach of the
purchase orders and its claim for declaratory
relief as to an intellectual property dispute
is not based on a contract resulting from a
purchase order.  Because the declaratory
relief claim is validly brought in the
Eastern District of California, enforcement
of the forum selection clause is
unreasonable.

In support of the instant motion, General Wire contends:

In light of General Wire's current
willingness to forego its intellectual
property claims so that the choice of law and
venue in its purchase orders may be given the
intended effect, Vision Tech's declaratory
judgment claim is now moot.  To the extent
that General Wire will not object to Vision
Tech's continued promotion and sale of its
Intruder and Intruder Elite products, as
those products currently exist in their
current versions, Vision Tech no longer
requires the requested declaration.
Accordingly, and consistent with the Court's
prior ruling, enforcement of the forum
selection clause contained in the parties'
purchase order terms and conditions is no
longer unreasonable, and the remainder of
this action properly should be transferred to
the Western District of Pennsylvania.

Vision Tech opposes General Wire's motion.

First, Vision Tech contends, the motion is "procedurally
defective".  Although the motion is based on Rule 12(b)(3),
Vision Tech argues that it is confusing and appears to be a
motion to strike and/or for summary judgment because of language
in the proposed Order striking allegations of the FAC and the

language in the proposed Order withdrawing Vision Tech's Sixth
Cause of Action as long as Vision Tech's products do not resemble
General Wire's products.  Vision Tech contends that the motion
does not comply with Rule 7(b)(1), Federal Rules of Civil
Procedure, because it does not state the grounds with
particularity; and the proposed Order purports to withdraw the
infringement claim but then requests the court to protect General
Wire from infringement.  Vision Tech contends that, if the motion
is characterized as one to strike, it is untimely.  If the motion
is characterized as one for partial summary judgment in favor of
Vision Tech, it is not authorized by Rule 56, Federal Rules of
Civil Procedure, which authorizes "motions for summary judgment
by a party <u>making a claim</u> against the opposing party in the
<u>former's favor</u> and by a party <u>opposing a claim</u> against the party
making the claim in favor of <u>the party opposing the claim</u>, not in
favor of the party making the claim!"

While General Wire's motion is awkwardly worded, it is clear
that General Wire is attempting to remove what it believes is the
only obstacle to enforcement of the forum selection clause in the
purchase orders.  Therefore, although the motion and proposed
Order uses the term "strike", the motion clearly is not a Rule
12(f) motion.  Vision Tech's reference to summary judgment is
meaningless given the context of General Wire's motion.

Vision Tech further argues that General Wire has misread the
July 17, 2007 Memorandum Decision.  As Vision Tech correctly
notes, denial of the motion to dismiss or transfer was not based

13

solely on the existence of the Sixth Cause of Action.[1]

General Wire replies that the July 17, 2007 Memorandum Decision "determined that the propriety of venue in the Eastern District of California was contingent upon Vision Tech's seeking declaratory relief" and that the Court "indicated that Vision Tech's declaratory relief claim was broader than the parties' agreed upon forum selection clause that properly governed Vision Tech's remaining contractually based claims."

General Wire's reading of the July 17, 2007 Memorandum Decision is incorrect. To repeat, the July 17, 2007 Memorandum Decision ruled:

> This analysis is misplaced. Taking the Complaint's allegations as true, Vision Tech alleges that a broader contractual arrangement was formed, only a portion of which was represented by purchase orders. General Wire is alleged to have agreed to exclusively purchase from Vision Tech all General Wire's requirements for sewer line inspection and maintenance products. An additional contract, executed by part performance that caused Vision Tech to purchase large numbers of parts to its economic detriment, is also alleged.
>
> The motion to dismiss or transfer this action based on the forum selection clause is

---

[1] Vision Tech further argues that a partial summary judgment in Vision Tech's favor on the Sixth Cause of Action will not remove the claim from the case because the Court could later reconsider unless judgment pursuant to Rule 54(b), Federal Rules of Civil Procedure, is granted. General Wire is not moving for partial summary judgment but is seeking an order withdrawing the Sixth Cause of Action and transferring the case to Pennsylvania. Vision Tech further notes that General Wire's Twenty-Second Affirmative Defense relates to its intellectual property claims. However, General Wire's responsive pleading can be amended if the motion is granted.

> DENIED.  As Vision Tech argues, not all of
> its claims are based on breach of the
> purchase orders and its claim for declaratory
> relief as to an intellectual property dispute
> is not based on a contract resulting from a
> purchase order.  Because the declaratory
> relief claim is validly brought in the
> Eastern District of California, enforcement
> of the forum selection clause is
> unreasonable.

General Wire's basic premise, that its stipulation to resolution of the declaratory relief claim mandates transfer of venue of this action pursuant to the forum selection clause in the purchase orders, is without merit.  General Wire's second motion to dismiss or transfer is DENIED.

    B.   <u>Vision Tech's Countermotion to File Second Amended Complaint</u>.

Vision Tech moves for leave to file a Second Amended Complaint to add causes of action for inducement of breach of contract, and intentional and negligent interference with prospective economic advantage, respecting the alleged damage done to Vision Tech in 2007 when General Wire in bad faith falsely told Rycom Instruments, Inc. and other vendors that Vision Tech was infringing on General Wire's intellectual property.  Vision Tech contends that General Wire's "judicial concession at this time that Vision Tech should have judgment on its declaratory relief claim confirms GWS's misconduct and defamation."  In addition, the proposed Second Amended Complaint alleges a claim against Arthur Silverman and General Wire for breach of fiduciary duty:

15

1
2
3
4
5
6
7

> The acts of GWS and Arthur Silverman were part of a scheme on the part of GWS and Arthur Silverman, who was GWS's Chief Executive Officer, to take advantage of Arthur Silverman's fiduciary position as a member of Vision Tech's Board of Directors and his access to Vision Tech's confidential information to enable GWS to bankrupt Vision Tech and take over Vision Tech's California business.  GWS's conduct not only included Mr. Silverman's breach of his fiduciary duties, but included defaming Vision Tech to Rycom and others ....

8   Vision Tech contends that leave to amend should be granted

9   "because it is early in this case and there has been no

10  prejudicial delay."  If leave to file the Second Amended

11  Complaint is granted, Vision Tech argues, the new causes of

12  action described above negate any reliance on the forum selection

13  clause in the purchase orders to dismiss or transfer venue of the

14  action pursuant to the cases cited in the July 17, 2007

15  Memorandum Decision.

16      Rule 15(a), Federal Rules of Civil Procedure, provides that

17  "leave [to amend] shall be freely given when justice so

18  requires."  "The purpose of pleading is 'to facilitate a proper

19  decision on the merits' ... and not erect formal and burdensome

20  impediments to the litigation process.  Unless undue prejudice to

21  the opposing party will result, a trial judge should ordinarily

22  permit a party to amend its complaint."  *Howey v. United States*,

23  481 F.2d 1187, 1990 (1973).  However, "[t]his strong policy

24  toward permitting the amendment of pleadings ... must be tempered

25  with considerations of 'undue delay, bad faith or dilatory motive

26  on the part of the movant, repeated failure to cure deficiencies

16

by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'  *Foman v. Davis*, 371 U.S. 178, 182 ... (1962)."  *Schlacter-Jones*, 936 F.2d 455, 443 (9th Cir. 1991).

General Wire argues that leave to amend should be denied. General Wire asserts that the basis for Vision Tech's motion for leave to amend is its recognition that the remaining contractually based claims should be transferred to the Western District of Pennsylvania pursuant to the forum selection clause and that Vision Tech feels compelled "to invent new theories of tort liability against General Wire and now its CEO ... for the purpose of improperly bootstrapping this litigation to the Eastern District of California."   General Wire contends that Vision Tech's motion for leave to amend "emit[s] themes of bad faith, dilatory motive, prior amendments, futility of currently sought amendment, and undue delay."

As discussed above, even if the stipulation sought by General Wire with regard to the declaratory relief claim is accepted, the July 17, 2007 Memorandum Decision denied transfer on other grounds.  General Wire's claim of bad faith in seeking leave to amend fails for this reason.

General Wire's contention that leave to amend should be denied because of Vision Tech's dilatory motive and undue delay is unpersuasive given the circumstances of this litigation.  The parties have not completed discovery, the discovery cut-off date being July 30, 2008.  Jury trial is set for December 9, 2008.

17

The fact that Vision Tech has already filed an amended complaint in response to the July 17, 2007 Memorandum Decision does not compel denial of this motion.  In *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.4 (9th Cir.1987), the Ninth Circuit noted:

> Another factor occasionally considered when reviewing the denial of a motion for leave to amend is whether the plaintiff has previously amended her complaint.  In *Mir v. Fosberg*, 646 F.2d 342 (9th Cir.1980), the plaintiff had amended his complaint once.  Both the original complaint and the amended one were dismissed for lack of jurisdiction.  When the plaintiff requested leave to file a second amended complaint, the district court denied the motion.  In affirming the denial, this court held that a district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint ....' ....

Here, the FAC was filed in response to the Memorandum Decision addressing General Wire's first motion to dismiss for failure to state a claim.  The proposed Second Amended Complaint is not another effort to state a claim in response to that motion to dismiss but, rather seeks to allege new and different claims for relief.  This is not a situation in which a plaintiff repeatedly tries unsuccessfully to state a claim.

General Wire argues that leave to amend should be denied on the ground of futility.  General Wire argues that the proposed Seventh Cause of Action for inducement of breach of contract, the Eighth Cause of Action for intentional interference with prospective economic advantage, and the Ninth Cause of Action for

negligent interference with prospective economic advantage, are futile because these claims "are intertwined with the parties' contractual relationship, including the purchase orders."

General Wire cites *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa.Super.2002), for the proposition that Pennsylvania's "gist of the action" doctrine precludes these causes of action:

> Generally, the doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims ... As practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims ... The *Bash* Court explained the difference between contract claims and tort claims as follows:
>
> > [a]lthough they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law.  Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals ... To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.
> >
> > ...
> >
> > Thus, '[a]lthough mere nonperformance of a contract does not constitute a fraud[,] it is possible that a breach of contract also gives rise to an actionable tort[.] To be construed as a tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral ... 'The important difference between contract and tort actions

19

1
2
3
4
5

> is that the latter lie from the breach of
> duties imposed as a matter of social policy
> while the former lie for the breach of duties
> imposed by mutual consensus.' ... 'In other
> words, a claim should be limited to a
> contract claim when "the parties' obligations
> are defined by the terms of the contracts,
> and not by the larger social policies
> embodied in the law of torts.'

6  **811 A.2d at 14.**

7      **General Wire asserts that California recognizes a similar**

8  **doctrine, "the economic loss doctrine."   The case cited by**

9  **General Wire, *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477 (9th**

10  **Cir.1995), involved Arizona law, not California law.**

11      **In *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th**

12  **979 (2004), the California Supreme Court explained the "economic**

13  **loss doctrine":**

14
15
16
17
18
19
20
21
22
23
24
25

> [T]he economic loss rule provides: '"'[W]here
> a purchaser's expectations in a sale are
> frustrated because the product he bought is
> not working properly, his remedy is said to
> be in contract alone, for he has suffered
> only "economic" losses.'" This doctrine
> hinges on a distinction drawn between
> transactions involving the sale of goods for
> commercial purposes where economic
> expectations are protected by commercial and
> contract law, and those involving the sale of
> defective products to individual consumers
> who are injured in a manner which has
> traditionally been remedied by resort to the
> law of torts.' ... The economic loss rule
> requires a purchaser to recover in contract
> for purely economic loss due to disappointed
> expectations, unless he can demonstrate harm
> above and beyond a broken contractual promise
> ... Quite simply, the economic loss rule
> 'prevent[s] the law of contract and the law
> of tort from dissolving into the other.' ....

26  **34 Cal.4th at 988.**

20

As Vision Tech argues, the proposed Seventh, Eighth and Ninth Causes of Action do not recast breach of contract claims into tort claims:

> GWS's interference with Vision Tech's contract and prospective relations with Rycom, having occurred after Vision Tech's contractual relationship with GWS had ended and having resulted from GWS's false assertions that Vision Tech was infringing on GWS' intellectual property, are obviously distinct torts from the claims for breach of the Exclusive Requirements Contract and Breach of Purchase Orders.

General Wire argues that the proposed amendment to add Arthur Silverman as a defendant violates Rule 20(a), Federal Rules of Civil Procedure:

> ... All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

General Wire contends that Vision Tech's proposed Tenth Cause of Action against Arthur Silverman for breach of fiduciary duty in his individual capacity as a member of Vision Tech's board of directors, is unrelated to this case and does not arise out of the related transactions or occurrences.

The proposed Second Amended Complaint alleges that Silverman was the CEO and principal owner of General Wire; that it was agreed by Vision Tech and General Wire that Silverman would become a member of Vision Tech's board of directors; that

21

1  Silverman was a member of Vision Tech's board of directors from

2  July 2002 to November 2006; that, during his tenure as a member

3  of Vision Tech's board of directors, Silverman disclosed to

4  General Wire confidential proceedings of Vision Tech's board of

5  directors, disclosed Vision Tech's confidential proprietary trade

6  secrets and information to General Wire, sought to use his

7  position as a member of Vision Tech's board to the advantage of

8  General Wire over Vision Tech, and, during the period 2005-2006,

9  sought to use his position as board member of Vision Tech to

10 bankrupt Vision Tech and drive it out of business so that General

11 Wire would acquire Vision Tech's business and assets in

12 California at little or no cost.

13     Rule 20(a) is satisfied because the claims against General

14 Wire and Silverman involve the same transactions or occurrences,

15 referring to the allegation in the proposed Tenth Cause of Action

16 that Silverman breached his fiduciary duties to Vision Tech by:

17            assisting General Wire to obtain Vision
              Tech's confidential pricing and other
18            information from Vision Tech vendors who were
              subject to confidentiality agreements so that
19            General Wire could use the confidential
              information to obtain cost savings from
20            Vision Tech; assisted General Wire with
              taking advantage of Vision Tech's reliance on
21            and vulnerability from, the exclusive
              requirements contract alleged above; stymied
22            and interfered with Vision Tech's ability to
              correct, resist, and rebut the overreaching
23            of General Wire.

24     Vision Tech's motion for leave to file the proposed Second

25 Amended Complaint is GRANTED.  Pursuant to Rule 15(a), leave

26 should be freely granted and General Wire is not persuasive in

1  contending that the factors militating against leave to amend are
2  present.

CONCLUSION

4       For the reasons set forth above:

5       1.   Defendant General Wire Spring Company's motion to
6  dismiss or transfer is DENIED;

7       2.   Plaintiff Vision Technology Design & Manufacturing
8  Inc.'s motion for leave to file that proposed Second Amended
9  Complaint is GRANTED; and

10      3.   Plaintiff shall file the proposed Second Amended
11  Complaint within five court days of the filing date of this
12  Memorandum Decision and Order.

13  IT IS SO ORDERED.

14  Dated:   February 4, 2008            _____/s/ Oliver W. Wanger_____
                                          UNITED STATES DISTRICT JUDGE